# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

PAUL EDWARDS,
　　　　Plaintiff,

v.

MCMILLEN CAPITAL, LLC,
　　　　Defendant.

No. 3:18-cv-346 (SRU)

## RULING AND ORDER ON MOTION TO DISMISS

Litigation between the parties in this action, stemming from a dispute over the terms and purpose of a 2012 loan transaction, has been ongoing since 2015. Following lengthy proceedings in state court that resulted in dismissal for failure to prosecute, Paul Edwards, proceeding *pro se*, filed the instant complaint in February 2018. In that complaint and the subsequent amended complaint, Edwards raises substantially the same claims that he raised in state court. Specifically, Edwards contends that terms of a loan extended to him by McMillen Capital, LLC were improperly structured as a commercial (rather than consumer) transaction and that those terms violated the federal Truth in Lending Act (TILA) (15 U.S.C. §§ 1601, et seq.), the Connecticut Truth in Lending Act (Conn. Gen. Stat. § 36a-675, et seq.) and the Connecticut Unfair Trade Practices Act (CUTPA) (Conn. Gen. Stat. § 42-110a et seq.). He additionally brings claims of negligence, negligent infliction of emotional distress and breach of the implied covenant of good faith and fair dealing. The action was dismissed in 2018 as barred under the Rooker-Feldman doctrine, and Edwards timely appealed. After the Second Circuit vacated the dismissal and remanded the case, McMillen Capital again moved for dismissal of all claims. For the following reasons, the motion to dismiss is **granted**.

## I.　　Factual Background

The dispute in this case centers on a loan transaction that took place in April 2012, nearly nine years ago. Am. Compl. Doc. No. 8 at 4.  In March of that year, Edwards entered into a real estate purchase contract with Fannie Mae for a property located at 7 New Lane, Cromwell, Connecticut. *See id; see also*

Pl.'s Ex. G, Doc. No. 60-7. To finance the purchase of the home, Edwards obtained a loan from McMillen Capital secured by a mortgage on the property and evinced by a note. *See* Am. Compl. Doc. No. 8 at 23, Pl.'s Ex. J, Doc. No. 60-10. The terms of the mortgage note specifically provided that the loan was a commercial transaction. *See id.* The note (as well as the loan commitment letter) additionally provided, however, that Edwards was obligated to occupy the property within 60 days of executing the note and must continue to occupy the property for at least one year. *See id; see also* Def.'s Exhibit G, Doc. No. 53. Edwards also confirmed his intention to "owner occupy" the property to McMillen Capital prior to the execution of the mortgage note. *See* Pl.'s Ex. H, doc. No. 60-8.

Relying on those documents, Edwards contends that McMillen Capital was aware of his intention to use the loan to purchase his primary residence and therefore violated various provisions of federal and state law by structuring the terms of the loan as a commercial rather than consumer transaction. McMillen Capital moves for dismissal on the grounds that Edwards' claims are barred by *res judicata* and collateral estoppel, as well as by the relevant statutes of limitations. McMillen Capital additionally contends that Edwards has failed to state a claim for negligence, breach of the implied covenant of good faith and fair dealing, NIED or a violation of CUTPA.

For the following reasons, the motion to dismiss is **GRANTED**.

## II.    Procedural History

The history of litigation in state court between the parties is relatively lengthy. Relevant here, Edwards filed a complaint with the Connecticut Banking Commission regarding the terms of the loan in December 2013; he then filed a complaint in Middlesex Superior Court on June 24, 2015. *See* Exhibit D Doc. No. 60-4. He amended the complaint in October of 2015 and revised it twice (on January 20, 2016 and again on February 29, 2016). *Id.* Following that second revision, McMillen Capital filed a motion to strike the complaint in its entirety, which was granted by Judge Aurigemma on November 4, 2016.[1] *Id.*

---

[1] The order granting the motion to strike purports to address a complaint filed on January 8, 2015. However, the first complaint in state court was not filed until June 2015. Although it is not entirely clear, I assume Judge Aurigemma's order addresses the complaint filed February 29, 2016 (the revised amended complaint filed prior to the motion to strike).

Edwards timely filed a substitute complaint, which McMillen also moved to strike. *Id.* Judge Domnarski granted that motion on June 7, 2017. *Id.* Edwards filed a second substitute complaint on June 19, 2017. *Id.* On July 17, 2017 McMillen filed a request to revise that second substitute complaint, requesting that Edwards delete the complaint in its entirety because it was duplicative of the previously struck complaint. *Id.* Edwards filed an objection to the request to revise, which was overruled by Judge Domnarski on August 28, 2017. *Id.*

Edwards then filed a third substitute complaint on September 12, and a motion for a continuance to extend the date to close the pleadings, which was denied. *Id.* On September 18, Edwards filed a motion to restore the second substitute complaint to the docket and to withdraw the third substitute complaint. The court does not appear to have acted on that motion. *Id.* On September 20, 2017 the action was dismissed for failure to prosecute on the grounds that Edwards had failed to timely close the pleadings. *See* Pl.'s Exhibit C Doc. No. 60-3. Edwards filed a motion to reopen the judgment of dismissal, which was denied. *Id.*

On February 27, 2018 Edwards filed the original complaint in the case at bar. He amended the complaint on March 20, 2018. *See* Compl. Doc. No. 1; *see also* Am. Compl. Doc. No 8. In the amended complaint, at issue here, Edwards alleges five separate claims related to the 2012 loan transaction, including: (1) violations of TILA and the Connecticut TILA; (2) violations of CUTPA; (3) negligence; (4) negligent infliction of emotional distress and; (5) breach of the implied covenant of good faith and fair dealing. On May 4, 2018 McMillen Capital moved to dismiss the amended complaint, arguing that the claims were barred under the doctrines of *res judicata*, collateral estoppel and Rooker-Feldman. *See* First Mot. to Dismiss, Doc. No. 14 at 1. In the alternative, McMillen Capital argued that the claims were legally insufficient and barred by various statutes of limitations. *Id.*

On October 10, 2019 following a hearing, I granted the motion to dismiss on the grounds that the claims were barred under the Rooker-Feldman doctrine. *See* Min. Entry Doc. No. 37; *see also* Trans. of Mot. Hrg., Doc. No 47. Edwards timely appealed the dismissal. *See* Not. of Appeal, Doc. No. 42. The Second Circuit vacated the dismissal and remanded the case, holding that despite the state court's careful

consideration of Edwards' claims and the similarity between those claims and the claims raised in the amended complaint, the action was not barred under the Rooker-Feldman doctrine. *See Edwards v. McMillen Capital, LLC,* 952 F.3d 32 (2d Cir. 2020). The Court focused specifically on the fact that the action was ultimately not dismissed on the merits, but instead was dismissed for failure to prosecute. Because the action had not been finally decided on the merits by the state court, consideration in federal court of the same claims was not precluded under the Rooker-Feldman doctrine. *Id.*

McMillen Capital subsequently filed this second motion to dismiss, arguing that the claims are barred by *res judicata* and collateral estoppel. *See generally* Mem. in Supp. of Mot. to Dismiss, Doc. No. 53 ("Def's. Mem."). In the alternative, McMillen Capital contends that the claims should be dismissed as legally insufficient and barred by the relevant statutes of limitations. *Id.* Edwards maintains that his claims are not barred by *res judicata* or collateral estoppel because the dismissal for failure to prosecute was not a judgment on the merits. *See* Mem. in Opp. to Sec. Mot. to Dismiss ("Pl.'s Mem."), Doc. No. 60 at 10, 13, 19. Edwards additionally maintains that his claims are both timely and adequately pleaded.

## III. Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). A court considering a motion under Rule 12(b)(6) must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). Although a plaintiff bears the burden of establishing plausibility at the pleading stage, the standard is "not akin to a probability requirement." *Iqbal*, 556 U.S. at 678. Instead, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct" in order to establish a right to relief. *Id.* at 679.

A court deciding a Rule 12(b)(6) motion is additionally limited to considering facts alleged in the complaint, and generally may not look to evidence outside the pleadings. "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal citations omitted). Under established precedent in this Circuit, a court may additionally consider "documents attached to the complaint as an exhibit or incorporated in it by reference", "matters of which judicial notice may be taken", and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" without converting the motion to one for summary judgment. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). A court may additionally consider "documents used by [a] defendant" so long as a plaintiff has "actual notice of all the information in the movant's papers and has relied on upon those documents in framing the complaint." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

Here, McMillen Capital attaches as exhibits to its motion the original complaint copies of the various complaints that Edwards filed in Superior Court (along with exhibits he submitted), the Superior Court orders striking the complaints, the mortgage note and the loan commitment letter. *See* Def.'s Ex. A-G, Doc. No. 51. Edwards attaches to his memorandum in opposition: the Second Circuit opinion; the transcript of the prior hearing in this action; the notice of dismissal for failure to close the pleadings from Superior Court; a printout of the docket entries in the Superior Court proceedings; a copy of Judge Domnarski's order striking the substitute complaint in Superior Court; documents from the Connecticut Banking Commission's investigation; the Fannie Mae Real Estate Purchase addendum; copies of emails between an attorney for McMillen Capital and Edwards regarding the loan transaction; the loan commitment letter and; the mortgage note. *See* Pl.'s Ex. A-J. I will consider all of the documents submitted, because each is specifically referenced in the complaint and is integral to Edwards' stated claims. Furthermore, I will take judicial notice of the state-court proceedings, which are public record, and the fact that Edwards raised certain claims in those proceedings. *See Beauvoir v. Israel,* 794 F.3d 244,

248 n.4 (2d Cir. 2015) (a court may take judicial notice of separate litigation between parties including "the fact that the state-court complaint contained certain statements, albeit not for the truth of the matters asserted.") (internal citations omitted); *see also Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (same).

## IV.   Discussion

### 1.   Res Judicata

 McMillen Capital contends that the claims raised in this action are identical to the claims raised, considered on the merits and ultimately stricken in Superior Court. Accordingly, McMillen argues that the claims are barred under the doctrine of *res judicata*. *See* Def.'s Mem. Doc. No. 53.

Analysis of that argument begins with the full faith and credit clause of 28 U.S.C. § 1738, which requires "federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982). Accordingly, Connecticut law governs the effect of previous judgments in this case. Under Connecticut law, "[a] valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties…upon the same claim or demand." *Weiss v. Weiss,* 297 Conn. 446, 459 (2010) (internal citations and quotation marks omitted). In order for *res judicata* to bar a claim, four requirements must be met:

(1) The judgment in the original action was rendered on the merits by a court of competent jurisdiction;
(2) The identities of the parties are the same;
(3) The parties had an adequate opportunity to litigate the matter fully;
(4) The same claim, demand or cause of action is at issue.

*See Tirozzi v. Shelby Ins. Co*., 50 Conn. App. 680, 686 (1998).

Edwards first contends that the claims raised in this action are markedly different from the claims decided in state court and are therefore not barred by *res judicata*. That claim is unavailing. Connecticut courts have adopted a fairly broad test to determine whether a claim is substantially the same as one previously raised, and a claim will be barred where it relates "to all or any part of the transaction, or series of connected transactions, out of which the [previous] action arose." *Pond v. Town of N. Branford*, 2013

U.S. Dist. LEXIS 30304 at *11-12 (D. Conn. Mar. 6, 2013); *see also Powell v. Infinity Ins. Co.*, 282 Conn. 594, 604 (2007) ("[w]hat factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation"). Because the claims raised in this action arise out of the same loan transaction that formed the basis of Edwards' state court claims and are, in fact, nearly identical to the claims raised in various iterations of Edwards' state court complaint, they constitute the "same claim" for purposes of *res judicata*.

Although his claims were considered and rejected on the merits in state court, Edwards nonetheless correctly argues that his claims were not finally adjudicated on the merits in state court. Despite the fact that the claims at issue in the case at bar are nearly identical those raised and carefully considered in Judge Domnarski's June 7, 2017 order striking Edwards' substitute complaint, Edwards was then permitted to file a second substitute complaint. *See Edwards v. McMillen Capital, LLC*, MMX-CV15-5008533-S at Doc. No. 150. Although McMillen Capital's subsequent request to delete that substitute complaint in its entirety was granted, no judgment was entered. *Id.* at Doc. No. 158.10. Instead, Edwards filed a third substitute complaint. *Id.* at Doc. No. 161. The action was then dismissed for failure to prosecute.[2] *See* Pl.'s Ex. C., Doc. No. 60-3.

Ordinarily, after a complaint is deleted[3] "for the reason that it is identical in substance to a prior [stricken] complaint" a court may enter judgment (on motion of a defendant) without giving a plaintiff a chance to revise the complaint because "there is no revision which the plaintiff may make." *Royce v. Westport*, 183 Conn. 177, 181 (1981); *see also Lund v. Milford Hosp., Inc*., 326 Conn. 846, 850 (2017) ("it is proper for a

---

[2] It is not entirely clear which complaint was dismissed for failure to prosecute, because Edwards filed a third substitute complaint and but then moved to reinstate the second substitute complaint. The Superior Court does not appear to have acted on the motion to reinstate, which was pending at the time the action was dismissed. In its objection to Edwards' motion to open the judgment of dismissal, McMillen argued that there "was no operative complaint" at the time of dismissal. *See Edwards v. McMillen Capital, LLC*, MMX-CV15-5008533-S at Doc. No. 171.

[3] Under Connecticut law, a defendant that seeks a revision on the grounds that a complaint is substantially similar to one previously stricken may request that the repetitive claims be "deleted." *See, e.g., Parker v. Ginsburg Dev. CT, L.L.C.,* 85 Conn. App. 777, 781 (2004) (*"a defendant who claims that an amendment to a complaint which replaces a complaint that previously was struck for legal insufficiency is essentially the same, has two options. The options are either to request that the plaintiff revise the complaint by deleting it, or alternatively to move to strike it."*).

court to dispose of the substance of a complaint merely repetitive of one to which a [motion to strike] had earlier been sustained"). Here, however, Edwards filed yet another substitute complaint (the third substitute complaint); he then moved to restore the second substitute complaint to the docket.[4] *See Edwards v. McMillen Capital, LLC*, MMX-CV15-5008533-S at Doc. No. 161. Accordingly, judgment cannot rest on the complaint that was stricken on the merits, because that complaint was replaced; only then was the action dismissed for failure to prosecute. *See Royce*, 183 Conn. at 182 ("The [stricken] pleading, superseded by the substitute pleading, is not revived by the order granting the request to revise, and judgment cannot rest on that superseded pleading alone."); *see also Lund,* 326 Conn. at 850 ("when an amended pleading is filed, it operates as a waiver of the original pleading.").

Under Connecticut law, dismissal for failure to prosecute does not constitute an adjudication on the merits for purposes of *res judicata. See Lacasse v. Burns*, 214 Conn. 464, 473 (1990) ("a dismissal entered pursuant to § 251 [now 14-3] is not an adjudication on the merits that can be treated as res judicata"); *see also Milgrim v. Deluca*, 195 Conn. 191, 194 (1985) (same). Because the ultimate dismissal of the action was not, under Connecticut law, a final judgment on the merits, *res judicata* does not operate as a bar to my consideration of Edwards' claims here.

### 2. Collateral Estoppel

McMillen Capital additionally contends that Edwards' claims are barred under the doctrine of collateral estoppel, which "prevents a party from relitigating an issue that has been determined in a prior

---

[4] In my view, had judgment properly been entered for McMillen Capital after Judge Domnarski granted the request to delete the second substitute complaint in its entirety, McMillen Capital would have a much stronger argument that Edwards' claims had been finally considered on the merits. In that situation, the request to revise is akin to a motion to strike. *See Melfi v. City of Danbury,* 70 Conn. App. 679, 684 (2002) ("although a motion to strike and a request to revise generally serve different functions, either may be used when the amended complaint merely restates the original cause of action that was previously stricken…[i]f the plaintiff here has in fact merely restated the original cause of action, the defendant would prevail on either pleading."); *see also Tirozzi v. Shelby Ins. Co.,* 50 Conn. App. 680, 686 (1998) (motion to strike treated as adjudication on the merits for purposes of res judicata analysis). Because a ruling striking a complaint may be treated as an adjudication on the merits for purposes of *res judicata*, it is arguable that a request to delete a complaint in its entirety should be treated similarly when it is granted for the reason that a substitute complaint merely repleads previously stricken claims, as was the situation here.

suit." *Virgo v. Lyons*, 209 Conn. 497, 501 (1988). For collateral estoppel to operate to bar adjudication of

a particular issue, the issue must previously have been:

    (1)  fully and fairly litigated;
    (2)  actually decided; and
    (3)  necessary to the judgment in the first action.

*Sadler v. Lantz*, 2010 U.S. Dist. LEXIS 86956, at *6-7 (D. Conn. Aug. 20, 2010).

       "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for

determination, and in fact determined." *State v. Joyner*, 255 Conn. 477, 490 (2001). McMillen Capital

contends that collateral estoppel operates to bar subsequent litigation of the claims raised in the amended

complaint because those same issues were fully and fairly litigated by the Superior Court's rulings on two

separate motions to strike. As discussed above, however, the action was ultimately dismissed for failure to

prosecute. Accordingly, the issues raised in the amended complaint cannot be said to have been fully

litigated or actually decided, nor were they necessary to the previous judgment. *See, e.g., Scott v. Scott*,

190 Conn. 784, 787-88 (1983) (collateral estoppel did not apply where prior action had been dismissed

for failure to prosecute); *Testa v. Santopietro,* 1999 Conn. Super. LEXIS 3142, at *4 (Super. Ct. Nov. 17,

1999) (collateral estoppel did not apply to claims dismissed for failure to prosecute because "no issues

were determined in the previous action"). The doctrine of collateral estoppel therefore does not apply

here.

### 3.  Statute of Limitations

       In the alternative, McMillen Capital moves for dismissal on the grounds that each of Edwards'

claims is barred by the applicable statute of limitations. Ordinarily, a defendant may not raise affirmative

defenses in a pre-answer motion to dismiss. Where "the running of the statute is apparent from the face of

the complaint," however, the defense is properly raised and considered in a motion to dismiss. *Collin v.

Securi Int'l*, 322 F. Supp. 2d 170, 172 (D. Conn. 2004); *see also Ghartey v. St. John's Queens Hosp.,* 869

F.2d 160, 162 (2d Cir. 1989). Because the dates of the alleged violations clearly are not in dispute and are

clear from the face of the complaint, the defense is properly raised here.

### A.  TILA

TILA, originally enacted as part of the Consumer Credit Protection Act of 1968, is designed "to promote the informed use of consumer credit by requiring disclosures about its terms and cost." *Cheshire Mortg. Serv. v. Montes*, 223 Conn. 80, 97 (1992).[5] TILA imposes mandatory disclosure requirements on certain credit and loan transactions and additionally creates a private right of action for damages for violations of its provisions. *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016). Private claims under TILA are subject to a fairly strict statute of limitations; any action for damages must be brought within one year of "the occurrence of the violation." 15 U.S.C. § 1640(e). In 1994, Congress passed the Home Ownership and Equity Protection Act (HOEPA), an amendment to TILA that regulates certain high-cost mortgage transactions "secured by the consumer's principal dwelling, other than a reverse mortgage transaction." *See* 15 U.S.C. §§ 1602, 1639. Actions under certain provisions of HOEPA (sections 1639, 1639B, or 1639C) may be brought within three years of the date of the "occurrence of the violation."[6] 15 U.S.C. § 1640(e)*; see also Gray v. Capstone Fin.,* 2020 U.S. Dist. LEXIS 207866, at *19 (N.D.N.Y. Sept. 22, 2020).

The Connecticut legislature has enacted the Connecticut Truth in Lending Act, codified at Conn. Gen. Stat. § 36a-675, et seq., which is generally coextensive with TILA. "General Statutes §§ 36a-677(c) and 36a-678(b) provide that Connecticut's TILA is subject to the federal TILA…to avoid duplication in administration and enforcement of statutes." *Bank of New York v. Conway*, 50 Conn. Supp. 189, 197-98 (2006). The Connecticut TILA incorporates the federal statute of limitations, specifying that an action must be brought within the "time frames established in 15 U.S.C. [§] 1640(e)." Conn. Gen. Stat. § 36a-683(b).

---

[5] The Consumer Finance Protection Bureau is statutorily empowered to prescribe regulations to carry out the underlying goals of TILA; those regulations are codified at 12 C.F.R. Part 1026. *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016).

[6] I note that some courts have held that a one-year statute of limitations applies to HOEPA claims for damages. Others have looked to the plain language of the statute and concluded that for actions brought under HOEPA, a three-year statute of limitations is applicable. For purpose of this order only, I assume the three-year statute applies. *Compare Gray*, 2020 U.S. Dist. LEXIS 207866, at *1 (concluding that a three-year statute of limitations applies) *with Deswal v. United States Nat'l Ass'n*, 2014 U.S. Dist. LEXIS 66416, at *4 (E.D.N.Y. May 14, 2014) (HOEPA has a one-year statute of limitations).

For purposes of determining when the statute of limitations begins to run under TILA, courts in this Circuit have interpreted the phrase "occurrence of the violation" differently depending upon whether the transaction at issue is an "open-end" or "closed-end" transaction. "A closed-end credit transaction…includes a completed loan such as a mortgage or car loan. By contrast, an open-end credit transaction is one in which the creditor reasonably contemplates repeated transactions." *McAnaney v. Astoria Fin. Corp.*, 2008 U.S. Dist. LEXIS 5535, at *11 (E.D.N.Y. Jan. 25, 2008) (internal citations omitted). For closed-end transactions, the date of the occurrence of the violation is the date a party enters into a loan agreement or, in some circumstances, when funds under a loan agreement are transmitted. *See Baskin v. G. Fox & Co.*, 550 F. Supp. 64, 66 (D. Conn. 1982); *see also Figueroa v. SBC Bank USA*, 2017 U.S. Dist. LEXIS 46298, at *14 (N.D.N.Y. Mar. 29, 2017). For open-end transactions, some courts have applied the "discovery rule," holding that the statute of limitations begins to run on the date a party discovered, or reasonably should have discovered, the alleged violation. *See Figueroa,* 2017 U.S. Dist. LEXIS 46298 at *14. Others have determined that the statute of limitations begins to run on the date that a finance charge was imposed. *Follman v. World Fin. Network Nat'l Bank*, 971 F. Supp. 2d 298, 301 (E.D.N.Y. 2013) ("when a TILA claim arises out of the imposition of a finance charge in [an open-end credit plan], courts have typically held that the statute of limitations runs from the date on which the finance charge is first imposed").

Additionally, both the Connecticut and federal TILA recognize an exception to the one-year statute of limitations for borrowers exercising rescission rights. *See* Conn. Gen. Stat. § 36a-683(e); *see also* 15 U.S.C. § 1635(a)-(f). Under section 1635, an "obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction." 15 U.S.C. § 1635(a). Section 1635 additionally imposes upon a creditor a duty to "conspicuously disclose" that right when the transaction is consummated. *Id.* "If the creditor fails completely to provide a rescission notice to the consumer, the consumer has an extended period of three years after the consummation date in which to rescind a consumer credit transaction." *Bank of New York,* 50 Conn. Supp. at 197-98.

TILA (and, by extension, HOEPA) are only applicable to consumer credit transactions and therefore do not apply to transactions involving credit extended for "business, commercial, or agricultural purposes." 15 U.S.C. § 1603; *Mauro v. Countrywide Home Loans, Inc.*, 727 F. Supp. 2d 145, 153 (E.D.N.Y. 2010). Because the Second Circuit has not articulated a standard for determining when a loan is made for a "business purpose", courts determining whether TILA applies to a particular transaction must conduct a fact-specific inquiry to determine the primary purpose of a loan. *Mauro,* 727 F. Supp. 2d at 153; *Krishtul v. VSLP United, LLC*, 2014 U.S. Dist. LEXIS 32033, at \*25 (E.D.N.Y. Mar. 11, 2014).

It is not clear from the face of the complaint that TILA applies to the loan transaction at issue in the case at bar; the purpose of the loan is at the heart of the dispute between the parties. Assuming, however, that the loan was subject to the restrictions imposed by TILA, both parties agree that the mortgage note was executed on April 30, 2012 and that Edwards did not file his complaint in Superior Court until June 24, 2015. *See* Def.'s Mem, Doc. No. 53 at 15; Am. Compl. Doc. No. 8. Additionally, if as Edwards argues, the claims raised in federal court are markedly different than those raised in state court, the claims would have been filed more than six years after the original transaction took place. Accordingly, McMillen Capital contends that even if TILA applies to govern the terms of the loan, all claims are clearly barred by the one-year statute of limitations provided by section 1640(e). Edwards argues that the claims are not time-barred because (i) a three-year statute of limitations applies to the claims; (ii) the discovery rule should apply to toll the statute of limitations; (iii) the statute of limitations should be equitably tolled and; (iv) the right of rescission did not attach until September 2013. *See generally* Pl.'s Mem. Doc. No. 60 at 29. I consider each of those arguments below.

    *i.*   HOEPA

Edwards contends that although the mortgage note describes the loan transaction as a "commercial transaction," it was in fact a high-cost consumer mortgage transaction subject to the restrictions of HOEPA.[7] *See* Am. Compl. Doc. No. 8 at 37; Pl.'s Mem, Doc. No. 60 at 29; *see also* 15

---

[7] Although Edwards does not cite to specific provisions of HOEPA in his Amended Complaint, he contends that the mortgage qualified as a "high-cost mortgage" subject to the substantive provisions of TILA. He additionally cites to

U.S.C. § 1602(bb) (defining "high cost mortgage). Because he brings claims under sections 1639 and

1639b-c of HOEPA, he contends that a three-year statute of limitations should apply. *Id*.

As an initial matter, Edwards alleges no facts in support of the claim that the loan transaction falls

under the provisions of HOEPA, which only applies to particular consumer credit transactions secured by

a consumer's principal residence. 15 U.S.C. §§  1602(bb)(1), 1639. However, even assuming that

HOEPA would apply, the three-year statute of limitations would still bar such a claim because the loan

transaction at issue occurred in April 2012.

Edwards argues that the loan is an open-end transaction to which the discovery rule should apply

and that the statute of limitations should therefore be tolled until March 2014. *See* Def.'s Mem. Doc. No.

60 at 28. Because the loan at issue was a mortgage loan, however, it does not constitute the type of "open-

end" transaction to courts have applied the discovery rule. [8] *Kelmetis v. Fannie Mae*, 2017 U.S. Dist.

LEXIS 11169, at *15 (N.D.N.Y. Jan. 27, 2017). Moreover, even if Edwards could establish that the loan

was an open-end transaction, the discovery rule applies only in situations where "a plaintiff would

reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted." *Saint-*

*Jean v. Emigrant Mortg. Co*., 50 F. Supp. 3d 300, 314 (E.D.N.Y. 2014). Here, Edwards sets forth no facts

in support of the claim that he was somehow unable to discover the allegedly violative terms of the loan

at the time of the transaction. *See* Am. Compl. Doc. No. 8 at 38. He merely states that he became aware in

December 2013 that the mortgage note defined the loan as a commercial transaction. *See id*. Accordingly,

even assuming that HOEPA governs the loan and that the discovery rule would apply, Edwards has not

established that he was unable to learn of the alleged violations in April 2012. The claim is therefore

---

specific provisions of HOEPA in his memorandum in opposition to the motion to dismiss. Accordingly, I assume
that he is referring to HOEPA in the complaint when he alleges that McMillen Capital violated provisions of TILA
relating to high-cost mortgage transactions. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (when a party
proceeds *pro se*, the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by
lawyers").

[8] HOEPA generally covers closed-end transactions but is also applicable certain open-end transactions, such as
home-equity lines of credit. *Gustavia Home, LLC v. Rice,* 2016 U.S. Dist. LEXIS 157212, at *11 (E.D.N.Y. Nov.
10, 2016).

time-barred. *See*, *e.g., McAnaney,* 2008 U.S. Dist. LEXIS 5535, at *28 (where original rider to loan specified later-disputed fees, discovery rule was inapplicable).

### ii.    Equitable Tolling

Edwards' claim that the statute of limitations should be equitably tolled is similarly unavailing. Although he states that McMillen Capital fraudulently concealed the TILA violations from him in an effort to hinder and delay his ability to file a claim, he offers no facts to support that contention. *See* Am. Compl. Doc. No. 8 at 38. Accordingly, he has not alleged "affirmative acts of concealment by the defendant over and above any alleged non-disclosure that forms the basis" of his claims as is required in order to warrant equitable tolling for alleged violations of TILA. *Gorbaty v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 55284, at *27 (E.D.N.Y. Apr. 18, 2012).

### iii.    Right of Rescission

Finally, Edwards argues that the statute of limitations should be tolled until September 13, 2012 because the original loan transaction was a residential mortgage transaction that was exempt from certain required disclosures under TILA (including notice of the right of rescission). *See* Am. Compl. Doc. No. 8 at 54; *see also* Pl.'s Mem., Doc. No. 60 at 23. Edwards maintains that because the loan was a "combined purpose loan", each advance on the loan was treated as a separate transaction and the right of rescission did not attach on April 30, 2012; instead, the right attached only when he received the second advance on the loan, on September 13, 2012. *See* Pl.'s Mem., Doc. No. 60 at 23 n.10. Because McMillen Capital failed to provide him with certain disclosures (including notice of his right to rescind the transaction) within three days of that second advancement, he had until September 13, 2015 to rescind the loan, and his complaint was timely filed. *Id.* at 23.

Initially, it is not clear that any part of this loan was subject to the right of rescission, which applies only to a "consumer credit transaction…in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a). Even assuming that Edwards had a right to rescind this transaction, however, the three-year extended statute of limitations

period applies only to actions seeking rescission, not actions seeking money damages for violations of disclosure requirements. *See* 15 U.S.C. § 1635(g); *see also Williams v. Aries Fin., LLC,* 2009 U.S. Dist. LEXIS 107812, at *17 (E.D.N.Y. Nov. 18, 2009); *Iroanyah v. Bank of Am., N.A.*, 851 F. Supp. 2d 1115, 1121-22 (N.D. Ill. 2012) (collecting cases for the proposition that damages actions for violations of section 1635 are subject to a one-year statute of limitations). Because Edwards never attempted to pursue the equitable remedy of rescission and chose instead to file an action for damages, the three-year period for exercising rescission rights is inapplicable to his claims. *See Nat'l City Mortg. Co. v. Lederman*, 2011 Conn. Super. LEXIS 505, at *27 (Super. Ct. Feb. 25, 2011) ("the defendants have not taken the steps necessary to rescind the transaction so the three-year limitations period does not apply").

### B.   CUTPA

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). To state a claim for a violation of CUTPA, a plaintiff must establish that "(1) the defendant was acting in trade or commerce; (2) that the defendant engaged in unfair or deceptive acts; and (3) that such unfair or deceptive acts caused the plaintiff to suffer an ascertainable loss." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 275 (D. Conn. 2017). "Connecticut courts have held that CUTPA applies to unfair or deceptive conduct by mortgage companies and other holders of mortgage notes." *Rodrigues v. J.P. Morgan Chase Bank*, 2009 U.S. Dist. LEXIS 102502 at *26 (D. Conn. Nov. 3, 2009).

Actions under CUTPA must be brought within three years of the occurrence of a violation. Conn. Gen. Stat. § 42-110g(f). However, Connecticut courts have applied the "continuing course of conduct doctrine" to toll certain statutes of limitations where a plaintiff establishes that a defendant "committed an initial wrong upon the plaintiff", and there is "evidence of the breach of a duty that remained in existence after commission of the original wrong." [9] *Watts v. Chittenden*, 301 Conn. 575, 585 (2011) (internal

---

[9] Whether the continuing course of conduct doctrine applies to claims under CUTPA remains an unsettled area of law. *See Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 298 (2014) (declining to reach question of whether

citations omitted). The Connecticut Supreme Court has held that later wrongful conduct of a defendant related to the prior wrong constitutes a breach of the duty. *Flannery v. Singer Asset Fin. Co.*, *LLC*, 312 Conn. 286, 312-13 (2014). "Such later wrongful conduct may include acts of omission as well as affirmative acts of misconduct." *Id.*

Edwards contends that that the statute of limitations should be tolled because: (1) McMillen Capital breached a duty owed under TILA by failing to issue certain disclosures under TILA in September 2013; (2) sought to foreclose on his home through December 2013 and; (3) made misrepresentations to the Banking Commission through April of 2015. *See* Am. Compl. Doc. No. 8 at 55, 60; Pl.'s Mem. Doc. No. 60 at 43-44.

Connecticut courts have recognized that the continuing course of conduct doctrine may be applicable where a fiduciary relationship exists between parties. *Tunick v. Tunick*, 201 Conn. App. 512, 537 (2020). "The gravamen of the continuing course of conduct doctrine is that a duty continues after the original wrong is committed." *Golden v. Johnson Memorial Hospital, Inc.*, 66 Conn. App. 518, 525, *cert. denied*, 259 Conn. 902 (2001). A traditional borrower-lender relationship, however, does not create a fiduciary relationship absent facts indicating the existence of some type of special relationship or reliance between the parties. *Southbridge Assocs., L.L.C. v. Garofalo*, 53 Conn. App. 11, 19 (1999).

Here, Edwards has not alleged that the relationship was anything more than a borrower-lender relationship and has not alleged the existence of "a continuing special relationship" following the initial mortgage transaction. *Flannery*, 312 Conn. at 321. Additionally, although Edwards contends that a duty was imposed by virtue of the disclosure requirements of TILA, courts have declined to imply a fiduciary duty from those requirements alone. *See Iannuzzi v. Am. Mortg. Network, Inc.,* 727 F. Supp. 2d 125, 138 (E.D.N.Y. 2010) (rejecting argument that TILA disclosure requirements created fiduciary duty*); Lee v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 37268, at *18 (N.D. Cal. Mar. 18, 2013) (rejecting claim

---

continuing course of conduct should apply because doctrine was inapplicable given particular facts alleged). I do not address the issue here because I conclude it does not apply under the circumstances of this case.

that TILA disclosure requirement created fiduciary duty). Edwards has therefore not adequately alleged that any continuing duty existed to warrant tolling the statute of limitations for his claims under CUTPA.

Edwards additionally argues that McMillen Capital committed later wrongful conduct related to the initial violation. He contends that after improperly structuring the loan to put him at an increased risk of default, McMillen Capital tried to force him to sell his primary residence rather than foreclosing on the property in order to collect on the terms of the note. *See* Am. Compl. Doc. No. 8 at 55, 57. Those allegations merely restate the claim that the terms of the note itself were in violation of various federal and state laws, rather than alleging "a series of acts or omissions" that would make it impossible to pinpoint the date of the alleged wrong such that the continuing course of conduct doctrine should apply. *Navin v. Essex Sav. Bank*, 82 Conn. App. 255, 263 (2004). With regard to the allegations regarding the Banking Commission's investigation, Edwards merely states that McMillen made "misrepresentations" to the Banking Commission by stating that the purpose of the loan was commercial. *See* Am. Compl. Doc. No. 8 at 19. Because the loan documents specified that the loan was commercial, that statement alone is insufficient to establish later wrongful conduct related to the underlying wrong. Accordingly, the claim under CUTPA is time-barred.

### C.   Connecticut General Statutes § 52-577

McMillen Capital moves for dismissal on the grounds that negligence, NIED and breach of the implied covenant of good faith and fair dealing claims are barred by Conn. Gen. Stat. § 52-577, which provides that a tort claim must be brought within three years of the date of the "act or omission complained of."[10] McMillen notes that the loan transaction at issue here took place in April of 2012, more than six years prior to the filing of this action. *See* Def.'s Mem. Doc. No. 53 at 12. Accordingly, McMillen argues that each of those causes of action is time-barred.

---

[10] McMillen Capital appears to additionally argue that the three-year statute of limitations applicable to tort actions bars Edwards' claims under CUTPA and TILA. However, those statutes are clearly governed by independent statutes of limitations. *See* 15 U.S.C. § 1640(e); Conn. Gen. Stat. § 42-110g(f).

Edwards attempts to rely on Connecticut General Statutes § 52-592 to argue that the case was timely filed because it was brought within a year of dismissal in state court. That section provides, in relevant part: "if any action, commenced within the time limited by law, has failed one or more times to be tried on its merits…for any matter of form" a plaintiff may commence a new action on the same claim within one year.[11] Conn. Gen. Stat. § 52-592.

Connecticut courts have repeatedly held that section 52-592 "is remedial in nature and, therefore, warrants a broad construction." *Ruddock v. Burrowes*, 243 Conn. 569, 575 (1998). "[I]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. The design of the rules of practice is both to facilitate business and to advance justice…[c]onsequently, § 52-592 (a) should be so construed as to advance the remedy rather than to retard it." *Id.* at 582-83; *see also Santorso v. Bristol Hosp.*, 308 Conn. 338, 355 (2013) ("the accidental failure of suit statute…is a savings statute that is intended to promote the strong policy favoring the adjudication of cases on their merits rather than the disposal of them on the grounds enumerated in § 52-592(a)").

Disciplinary dismissals, including dismissal for failure to close the pleadings, are not categorically excluded from the protections of the statute. *Skinner v. Doelger*, 99 Conn. App. 540, 554 (2007). Whether the statute should apply in a particular case of disciplinary dismissal entails a fact-specific inquiry into the circumstances of the dismissal, and a plaintiff must be "afforded an opportunity to make a factual showing that the prior dismissal was a matter of form in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect." *Ruddock*, 243 Conn. at 577. Courts have additionally considered the extent to which a plaintiff's conduct caused "delay or inconvenience to the court or to opposing parties." *Worth v. Comm'r of Transp.*,

---

[11] It is not clear that Edwards' claims for negligence or NIED were ever timely filed. The loan transaction at issue took place in April 2012 and Edwards brought his state court action in June 2015. However, McMillen does not raise that issue, so I do not address it here.

135 Conn. App. 506, 522 (2012). "Even in the disciplinary context, only egregious conduct will bar recourse to § 52-592." *Plante v. Charlotte Hungerford Hosp.*, 300 Conn. 33, 51 (2011).

Similarly, courts have broadly construed the phrase "cause of action" under section 52-592. "It is well settled that a cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief." *Daoust v. McWilliams*, 49 Conn. App. 715, 721 (1998) (quoting *Gallo v. G. Fox & Co.*, 148 Conn. 327, 330 (1961)); *see also Rogozinski v. Am. Food Serv. Equip. Corp.,* 34 Conn. App. 732, 739 (1994) ("Even though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action.") (internal citations omitted). Claims arising out of the same event or occurrence are therefore deemed the same cause of action for purposes of section 52-592. *Daoust*, 49 Conn. App. at 722.

Here, Edwards argues that the dismissal in the state court action was the result of mistake or inadvertence and appears to indicate that the error was due in part to his status as a *pro se* litigant. He notes that prior to the dismissal for failure to close the pleadings, he requested multiple continuances of the deadline and indicated to the court that he was unable to close the pleadings before McMillen Capital had filed a response to his third amended complaint. He additionally points to caselaw supporting the proposition that filing a false certificate of closed pleadings may result in dismissal of an action with prejudice. *See, e.g., Bongiovanni v. Saxon,* 99 Conn. App. 221, 223 (2007). He states that he was therefore "very fearful of closing the pleadings before they were joined." *See* Pl.'s Mem. Doc. No. 60 at 34. McMillen Capital, however, contends that Edwards' repeated repleading of legally insufficient claims five separate times constitutes a pattern of non-compliance so egregious that section 52-592 does not apply to save the claims.

I note initially that although it is the "established policy of the Connecticut courts to be solicitous of pro se litigants" that solicitude cannot "interfere with the rights of other parties." *Worth*, 135 Conn. App. 506, 530 n.6 (2012). Moreover, the purpose of section 52-592 is to permit an action to be adjudicated on the merits; here, Edwards' claims have been carefully considered and dismissed for failure to adequately state a claim in two separate orders. Because the action was ultimately dismissed for failure

to prosecute, however, Edwards is not barred from taking advantage of the provisions of section 52-592. Additionally, despite his repeated attempts to comply with the Superior Court's orders to properly revise the complaint and timely close the pleadings, Edwards' conduct likely does not rise to the level of egregiousness that would bar recourse to section 52-592. A careful review of the state court record establishes that Edwards filed multiple requests to continue the deadline to close the pleadings expressing confusion with regard to whether the pleadings could be closed before McMillen Capital filed a response to his third substitute complaint. *See* Docs. No. 160.00, 162.00. Prior to the deadline for closing the pleadings, he additionally filed a motion for "order of notice" requesting an explanation with regard to whether the pleadings could be closed before they had properly been joined. *See* Doc. No. 165.00. The court denied his motions for continuance without explanation.

Those repeated attempts to modify and clarify the court's order distinguish his conduct from the type of egregiousness cited by Connecticut courts in holding that section 52-592 does not apply to save a particular action. *See, e.g., Worth*, 135 Conn. App. at 520 (*pro se* plaintiff's repeated failure to comply with order without seeking modification, including failure to comply even after nonsuit was entered, coupled with failure to provide explanation for behavior sufficiently egregious to bar recourse to section 52-592); *Gillum v. Yale Univ.*, 62 Conn. App. 775, 787 (2001) (pattern of delay including history of dismissals for failure to prosecute over nine-year period constituted egregious conduct); *Pepitone v. Serman*, 69 Conn. App. 614, 619-20 (2002) (savings statute did not apply where plaintiff had failed twice before to adequately prosecute action leading to dismissal and failed to offer any explanation for conduct over the course of a nine-year period).

Here, in light of Edwards' repeated attempts to clarify or extend the deadline to close the pleadings, his conduct does not rise to the level of egregious or dilatory conduct that has been found sufficient bar recourse to section 52-592. Although Edwards has had his claims considered twice on the merits, he is correct that the dismissal was ultimately for what is considered a matter of form for purposes of section 52-592. Moreover, Connecticut courts have repeatedly emphasized that section 52-592 is to be broadly construed, and additionally that parties proceeding *pro se* must be afforded wide latitude.

Accordingly, to the extent that he raises claims in this action arising out of the same cause of action at issue in state court, those claims are not barred as untimely.

### 4.   Failure to State a Claim

McMillen Capital argues in the alternative that even if Edwards may avail himself of the savings statute, he has failed to state a cognizable claim for negligence, NIED and breach of the implied covenant of good faith and fair dealing. I agree with McMillen Capital.

### A.   Negligence

To state a claim for negligence under Connecticut law, a plaintiff must adequately plead the familiar elements of duty, breach, causation, and actual injury. *Radesky v. First Am. Title Ins. Co.*, 2003 U.S. Dist. LEXIS 15969, at *15 (D. Conn. Aug. 29, 2003). McMillen Capital contends that Edwards has failed to state a cognizable claim for negligence because he has not established that he was owed a duty of care. *See* Def.'s Mem., Doc. No. 53 at 16. Edwards contends that a duty arose "pursuant to the loan commitment agreement" and "pursuant to public policy, common law, state and federal law, TILA and statutory law." *See* Am. Compl. Doc. No. 8 at 31.

As discussed above, Connecticut courts have held that the mere existence of a borrower-lender relationship does not create a fiduciary duty. *See Southbridge*, 53 Conn. App. 11 at 19. Unless a borrower-lender relationship is "characterized by a unique degree of trust and confidence" no fiduciary duty will be implied. *Iacurci v. Sax*, 313 Conn. 786, 800 (2014). Here, as Judge Aurigemma noted when considering Edwards' negligence claim in Superior Court, Edwards has alleged no facts to indicate that there was anything more than a traditional borrower-lender relationship between the parties, nor has he alleged facts indicating that a unique degree of trust and confidence existed.[12] *See* Am. Compl. Doc. No. 8 at 32; Doc. No. 138.00. Accordingly, he has failed to adequately allege that McMillen Capital owed him a duty of care, much less that the duty was breached by virtue of the alleged improper loan terms.

---

[12] Judge Domnarski subsequently relied on that analysis in granting the motion to strike on June 7, 2017. *See* Doc. No. 145.10.

Edwards additionally contends that McMillen Capital breached certain "legal duties." Pl.'s Mem. Doc. No. 60 at 36. Under certain circumstances, "[s]tatutes and regulations can establish a duty of care that can form the basis of a negligence action." *Tanasi*, 257 F. Supp. 3d at 273. "Statutory negligence is actionable upon satisfaction of two conditions: (1) the plaintiff must be a member of the class protected by the statute; and (2) the injury must be of the type the statute was intended to prevent." *Small v. S. Norwalk Sav. Bank*, 205 Conn. 751, 760 (1988). Here, Edwards does not adequately allege either that he was a member of the class protected by the statute or that the injury suffered was of the type the statute was designed to protect. Because Edwards has not alleged any facts to suggest that McMillen Capital owed him a duty of care or that the circumstances of this transaction form a basis for a claim of statutory negligence, he has failed to state a cognizable claim of negligence. *See also Bentley v. Greensky Trade Credit, LLC,* 156 F. Supp. 3d 274, 290 (D. Conn. 2015) ("[plaintiff] has failed to allege plausibly that her injury is of the kind that TILA was designed to prevent. Because [plaintiff] has failed to plead facts consistent with the existence of a duty, the Court finds that her negligence claim is futile").

### B.  Negligent Infliction of Emotional Distress

To state a claim for NIED under Connecticut law, a plaintiff must allege that: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress. *Carrol v. Allstate Ins. Co*., 262 Conn. 433, 444 (2003). A plaintiff must allege not only that general harm was foreseeable, but specifically that the defendant's conduct was likely to cause "emotional distress likely to lead to illness or bodily harm." *Olson v. Bristol-Burlington Health District*, 87 Conn. App. 1, 5 (2005).

Edwards makes conclusory allegations that, by denying him the benefits of more favorable loan terms and threatening to foreclose on his home, as well as making misrepresentations to the Banking Commission, McMillen Capital caused him to experience emotional distress. *See generally* Am. Compl. Doc. No. 8. The allegations contained in the Amended Complaint are very similar to those raised and stricken by Judge Aurigemma, whose reasoning I find persuasive. There, as here, Edwards has merely

restated the elements of a cause of action for NIED without alleging any facts in support of his claim. *See* Am. Compl. Doc. No. 8 at 42. Conclusory statements that McMillen Capital threatened to exercise its foreclosure rights do not, without more, establish that McMillen Capital's conduct created an unreasonable risk of causing him severe emotional distress, or that such distress was foreseeable.

### C.  Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Connecticut law, the "duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship…[i]n other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004). Claims for violations of the implied covenant, however, may not be predicated on the "terms and purpose of the contract." *Id.* at 433. Instead, a claim under this breach of contract theory presupposes that the contract terms are agreed upon and that "what is in dispute is a party's discretionary application or interpretation of a contract term." *Id.* (internal citations omitted). Accordingly, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege "acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract." *Id.* (quoting *Alexandru v. Strong*, 81 Conn. App. 68, 80-81, *cert. denied*, 268 Conn. 906 (2004)).

Here, Edward maintains that McMillen Capital "denied the Plaintiff from receiving the benefits of loan terms that are consistent with and not contrary to Public Policy, Common Law, State & Federal Law, TILA and Statutory Law." *See* Am. Compl. Doc. No. 8 at 17; Pl.'s Mem. Doc. No. 60 at 48. However, he does not contend that he reasonably expected that the interest rate, default or balloon payment would be different than the terms set out in the agreement. Because he does not allege that any of McMillen's actions denied him benefits he reasonably expected to receive under the terms of the note, but instead argues that the terms of the agreement itself were improperly structured in violation of state and federal law, he has failed to state a cognizable claim for breach of the implied covenant of good faith and fair dealing.

**V.      Conclusion**

      For the foregoing reasons, the motion to dismiss (doc. no. 52) is **GRANTED.** The clerk is directed to enter judgment in favor of the defendants and close the case.


SO ORDERED.


Dated at Bridgeport, Connecticut, this 29th day of March 2021.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
